UNITED STATES BANKRUPTCY COURT Southern District of Texas
ENTERED
07/02/2012

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | **CASE NO: 08-38222** |
| **NORAM RESOURCES, INC., *et al*** | § | **CHAPTER 7** |
| | § | |
| **Debtor(s).** | § | **JUDGE ISGUR** |
| | § | |
| | § | |
| **WILLIAM G WEST** | § | |
| | § | |
| **Plaintiff(s),** | § | |
| | § | |
| **vs.** | § | **ADVERSARY NO. 11-3598** |
| | § | |
| **FREDERICK E PETERSON, *et al*** | § | |
| | § | |
| **Defendant(s).** | § | |

**MEMORANDUM OPINION**

William G. West, chapter 7 Trustee for the estates of Ausam Energy Corp. and Noram Resources, Inc. (collectively "Ausam/Noram") is suing Defendants Frederick E. Peterson, Richard T. Aab, Brian E. Bro, Kinloch Rice Field LLC ("Kinloch"), and the William Carey Crane, Jr. Trust ("Crane Trust") for turnover of property of the estate, damages and losses for violation of the automatic stay, and legal fees and expenses. The Defendants filed two separate state court lawsuits against former Ausam directors and officers, asserting claims for negligence and negligent misrepresentation.

Peterson and Aab's lawsuit settled, and Peterson and Aab were paid from the proceeds of an executive and organizational liability insurance policy allegedly owned by the Ausam/Noram estates. Kinloch and the Crane Trust's lawsuit is still pending. The Trustee asserts that the claims the Defendants brought in the state court lawsuits are property of the estate. He seeks turnover of the proceeds paid to Peterson and Aab and an injunction against Kinloch and the Crane Trust. The

Defendants move for summary judgment, arguing that as a matter of law, the claims are not property of the estate. The Trustee moves for a determination of property of the estate.

The Court grants, in part, and denies, in part, both the Defendants' motion for summary judgment and the Trustee's motion. The Defendants' state court petitions allege direct damages to the Defendants as a result of the Ausam directors' negligent misrepresentations. However, the Defendants also allege damages that are derivative of damages to Ausam. The claims are therefore, in part, property of the estate.

**Jurisdiction**

The United States District Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(b). This matter has been referred to the Bankruptcy Court by General Order 2012-06, pursuant to 28 U.S.C. § 157(a).

**Bankruptcy Court's Authority**

This Court may not issue a final order or judgment in matters that are within the exclusive authority of Article III courts. *Stern v. Marshall*, 131 S.Ct. 2594, 2620 (2011). The Court may, however, issue interlocutory orders, even in proceedings in which the Court does not have authority to issue a final judgment. A partial summary judgment is an interlocutory motion, and the constitutional limitations on the Court's authority to enter final judgments are not implicated. *See West v. WRH Energy Partners LLC (In re Noram, Inc.)*, 2011 WL 6936361, at *1 (Bankr. S.D. Tex. Dec. 30, 2011) (stating that interlocutory motion to dismiss does not implicate constitutional limitations on Court's authority).

**Background**

Ausam and Noram were oil and gas companies incorporated under the law of Alberta, Canada. Noram was a subsidiary of Ausam.

Ausam/Noram's major secured creditor was Huff Energy Fund, L.P. Ausam/Noram executed a $25,000,000.00 Senior Secured Convertible Debenture in favor of Huff. Under the terms

of the Debenture, Ausam/Noram was limited in its ability to issue shares. According to the Defendants' state court petitions, Ausam nonetheless issued shares and warrants on October 24, 2008 ("Subscription"). ECF. No. 22-2, at 4-5; ECF No. 22-3, at 6-8. It is undisputed that this issuance triggered a default under the Debenture.

After Huff asserted that Ausam had defaulted on the Debenture, Ausam and Noram both filed voluntary chapter 11 petitions on December 30, 2008. Noram's bankruptcy case is No. 08-38222 and Ausam's bankruptcy case is No. 08-38223. The cases are jointly administered under No. 08-38222.

On February 27, 2009, the cases were converted to chapter 7 cases on the Debtors' motion. No .08-38222, ECF No. 70. William G. West was appointed chapter 7 Trustee for the estates.

On August 3, 2009, Peterson and Aab, acting through their attorney Bro, filed a lawsuit ("Peterson lawsuit") against former Ausam directors and officers Mark Avery, William M. Hitchcock, Richard G. Lummis, Alastair J. Robertson, Robert Eriksson, Barry Borak, and Ralph D. Davis (collectively, "Directors"). Peterson and Aab amended their petition several times, eventually filing the Third Amended Petition on April 12, 2010. ECF No. 22-2. In the Third Amended Petition, Peterson and Aab sued the Directors for negligence/negligent failure to disclose material facts, seeking punitive damages and seeking to have the Directors held jointly and severally liable. Peterson and Aab alleged that the Directors "were negligent in consummating the Subscription, knowing that the issuance of Subscription shares and warrants would cause a default in the Debenture and/or in not obtaining Huff's written permission to go forward with the Subscription, prior to going forward with the Subscription, and that the Defaults negligently misrepresented . . . and/or was negligent in withholding material information" about Ausam's financial condition. ECF No. 22-2, at 9.

On January 5, 2011, Peterson and Aab non-suited their state court action, having purportedly settled the claims with the Directors. The Trustee alleges that American Home Assurance Co. paid

"hundreds of thousands of dollars" of proceeds from Policy No. 340 95 27 to Peterson and Aab in exchange for a full settlement of claims.

Kinloch and the Crane Trust, also acting through their attorney Bro, filed a similar lawsuit ("Kinloch lawsuit") against the Directors on February 24, 2011. Like Peterson and Aab, Kinloch and the Crane Trust alleged that the Directors were negligent in consummating the subscription and negligently misrepresented and/or negligently withheld material information about the financial condition of Ausam. ECF No. 22-3 at 10. The Kinloch lawsuit is still pending.

The Trustee filed this adversary proceeding against the Defendants on November 22, 2011. ECF No. 1. The Directors filed an unopposed motion to intervene on February 7, 2012. The Court granted the motion to intervene on February 17, 2012. Barry Borak, a former Ausam director, filed an unopposed motion to intervene on February 21, 2012, ECF No. 19, which the Court granted on March 15, 2012, ECF No. 26.

On February 29, 2012, Bro filed a motion for summary judgment. Bro argues that the Defendants are entitled to summary judgment because neither the claims at issue in the Peterson and Kinloch lawsuits nor the insurance proceeds are property of the estates. ECF No. 21, at 3. Peterson, Aab, Kinloch, and the Crane Trust also filed a motion for partial summary judgment regarding ownership of claims and insurance proceeds on February 29, 2012. ECF No. 23.

The Trustee filed a motion to determine property of the estate on the same day. ECF No. 22. The Trustee argues that the Defendants, in their state law actions against the Directors, allege harm to Ausam. According to the Trustee, any harm to the Defendants was derivative of the harm to Ausam. The Trustee seeks (i) a determination that the claims asserted in the Peterson and Kinloch lawsuits are property of the estate; (ii) an order that any amounts paid to Peterson and Aab are estate property; and (iii) an order the Trustee has the sole authority to bring the claims now pending in the Kinloch lawsuit.

The Trustee filed a consolidated response to the Defendants' motions for summary judgment on March 14, 2012. ECF No. 25. The Trustee asserts in the consolidated response that the claims belong to the Ausam/Noram estates and that the Defendants' arguments regarding the ownership of the insurance proceeds are largely irrelevant. Bro filed a response to the Trustee's motion to determine property of the estate and reply in support of Bro's motion for summary judgment on March 20, 2012. ECF No. 29.

The Directors filed a limited response to the cross-motions regarding claim ownership on March 20, 2012.

At a hearing on March 21, 2012, the Court ordered additional briefing on the appropriate measure of damages for the Defendants' claims against the Directors. ECF No. 38. The Defendants and the Trustee filed briefs on April 13, 2012. ECF Nos. 32 & 33. The Defendants, the Directors, and the Trustee filed response briefs on April 20, 2012. ECF Nos. 34, 35 & 36.

**Summary Judgment Standard**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Fed. R. Bankr. P. 7056 incorporates Rule 56 in adversary proceedings.

A party seeking summary judgment must demonstrate: (i) an absence of evidence to support the non-moving party's claims or (ii) an absence of a genuine dispute of material fact. *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009); *Warfield v. Byron*, 436 F.3d 551, 557 (5th Cir. 2006). A genuine dispute of material fact is one that could affect the outcome of the action or allow a reasonable fact finder to find in favor of the non-moving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

A court views the facts and evidence in the light most favorable to the non-moving party at all times. *Campo v. Allstate Ins. Co.*, 562 F.3d 751, 754 (5th Cir. 2009). Nevertheless, the Court is not obligated to search the record for the non-moving party's evidence. *Malacara v. Garber*, 353

F.3d 393, 405 (5th Cir. 2003). A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record, showing that the materials cited do not establish the absence or presence of a genuine dispute, or showing that an adverse party cannot produce admissible evidence to support the fact.[1] Fed. R. Civ. P. 56(c)(1). The Court need consider only the cited materials, but it may consider other materials in the record. Fed. R. Civ. P. 56(c)(3). The Court should not weigh the evidence. A credibility determination may not be part of the summary judgment analysis. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). However, a party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence. Fed. R. Civ. P. 56(c)(2).

"The moving party bears the burden of establishing that there are no genuine issues of material fact." *Norwegian Bulk Transp. A/S v. Int'l Marine Terminals P'ship*, 520 F.3d 409, 412 (5th Cir. 2008). The evidentiary support needed to meet the initial summary judgment burden depends on whether the movant bears the ultimate burden of proof at trial.

If the movant bears the burden of proof on an issue, a successful motion must present evidence that would entitle the movant to judgment at trial. *Malacara*, 353 F.3d at 403. Upon an adequate showing, the burden shifts to the non-moving party to establish a genuine dispute of material fact. *Sossamon*, 560 F.3d at 326. The non-moving party must cite to specific evidence demonstrating a genuine dispute. Fed. R. Civ. P. 56(c)(1); *Celotex Corp. v. Cattrett*, 477 U.S. 317, 324 (1986). The non-moving party must also "articulate the manner in which that evidence supports that party's claim." *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 301 (5th Cir. 2004). Even if the movant meets the initial burden, the motion should be granted only if the non-movant cannot show a genuine dispute of material fact.

[1] If a party fails to support an assertion or to address another party's assertion as required by Rule 56(c), the Court may (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if, taking the undisputed facts into account, the movant is entitled to it; or (4) issue any other appropriate order. Fed. R. Civ. P. 56(e).

If the non-movant bears the burden of proof of an issue, the movant must show the absence of sufficient evidence to support an essential element of the non-movant's claim. *Norwegian Bulk Transp. A/S*, 520 F.3d at 412. Upon an adequate showing of insufficient evidence, the non-movant must respond with sufficient evidence to support the challenged element of its case. *Celotex*, 477 U.S. at 324. The motion should be granted only if the non-movant cannot produce evidence to support an essential element of its claim. *Condrey v. Suntrust Bank of Ga.*, 431 F.3d 191, 197 (5th Cir. 2005).

**Analysis**

Because the claims the Defendants asserted in their state court lawsuits are, in part, property of the bankruptcy estates, the Court grants, in part, and denies, in part, the Defendants' motions for summary judgment and the Trustee's motion to determine property of the estate.

The Court need not consider whether the estates own the insurance policy or the proceeds that were used to pay Peterson and Aab as part of the settlement of the Peterson lawsuit. The Defendants correctly argue that insurance proceeds of policies established for the indemnification of directors and officers are not property of the estate. *Louisiana World Expo., Inc. v. Fed. Ins. Co. (In re Louisiana World Expo., Inc.)*, 832 F.2d 1391, 1401 (5th Cir. 1987). However, the Court agrees with the Trustee that the ownership of the insurance proceeds is irrelevant to the motions for summary judgment. The issue is not whether the Ausam/Noram estates own the policy or the proceeds; the issue is whether the estates own the claims.

The Court recognizes the possibility that Peterson and Aab may have received proceeds in settlement of claims that they did not own. However, the Court cannot determine at the summary judgment stage whether any of those proceeds must be repaid.

If the Trustee does not prevail on his claims against the Directors, the issue will be moot.

If the Trustee does prevail on his claims against the Directors, it is unclear whether the insurer will have to pay a second time or whether Peterson and Aab may have to pay over some of their proceeds. In any event, that issue is premature.

The Court concludes that the estates own some of the claims. If a cause of action belongs to the estate, then the Trustee has exclusive standing to assert the claim. *Schertz-Cibolo-Universal City, Indep. Sch. Dist. (In re Educators Grp. Health Trust)*, 25 F.3d 1281, 1284 (5th Cir. 1994). If, on the other hand, a cause of action belongs solely to the estate's creditors, then the trustee has no standing to bring the cause of action. *Id.* Whether a particular cause of action belongs to the estate depends on whether under applicable state law the debtor could have raised the claim as of the commencement of the case.[2] *Id.* If a cause of action alleges only indirect harm to a creditor (i.e., an injury which derives from harm to the debtor), and the debtor could have raised a claim for its direct injury under the applicable law, then the cause of action belongs to the estate. *Id.*

The Peterson lawsuit asserted, and the Kinloch lawsuit asserts, claims for negligence/negligent failure to disclose material facts. The Defendants purchased shares and warrants that were issued as part of the Subscription. They allege that the Directors misrepresented Ausam's financial condition in the Subscription and negligently withheld material information about Ausam's financial condition. The Directors allegedly failed to inform the Defendants that (i) Ausam had breached the terms of the Debenture by entering into "the Hitchcock/Mooney loan transaction"

---

[2] The parties dispute which law applies to the underlying claims. The Kinloch lawsuit suggests that New York law applies to the negligence/negligent misrepresentation claim, ECF No. 22-3, at 11, and the Trustee states in his brief on injury analysis that New York law governs the negligent misrepresentation claims in the Kinloch lawsuit, ECF No. 33, at 2. In their brief on injury analysis, the Defendants use Texas law to argue the appropriate measure of damages in the underlying lawsuits, but primarily focus on the Restatement (Second) of Torts. ECF No. 32. To the extent that the Directors' alleged negligence caused damages directly to Ausam, their actions are governed by Alberta law. *Avery*, 2011 WL 5357895, at *6. The Trustee asserts that the negligence claims are governed by Canadian law. This Court has held in related adversary proceedings that the law of the province of Alberta governs the internal affairs of Ausam/Noram. *WRH Energy*, 2011 WL 6936361, at *15 (Bankr. S.D. Tex. Dec. 30, 2011); *West v. Avery (In re Noram Res., Inc.)*, 2011 WL 5357895, at *6 (Bankr. S.D. Tex. Nov. 7, 2011). To the extent that the Defendants assert valid negligent misrepresentation claims, the claims are governed by state law, presumably either Texas or New York. The Court does not here decide which law governs or the validity of the claims under the applicable law, but instead focuses on the ownership of the claims based on the alleged injury. As analyzed below, the Court holds that the Defendants assert distinct negligence and negligent misrepresentation claims. The negligence claims are based on injury to Ausam, while the negligent misrepresentation claims are based on direct injury to the Defendants.

and (ii) the issuance of the shares and warrants breached the Debenture. The Directors also allegedly failed to disclose other pieces of material information, such as the status of Ausam's oil and gas leases, Ausam's cash shortages, and its problems with Huff.

The Defendants' claims for direct injury belong to them and are not property of the estate. *Educators*, 25 F.3d at 1284. Claims for negligent misrepresentation, to the extent that they are based on alleged harm directly to the creditor, belong to the creditor. In *Educators*, several school districts sued the former principals of EGHT, the debtor, alleging mismanagement and fraud. *Id.* at 1283. The Fifth Circuit held that several of the plaintiffs' causes of action alleged a direct injury to EGHT, from which the plaintiffs' injury was derived. *Id.* at 1284. These claims, the court held, belonged exclusively to the estate. *Id.* at 1285. However, some of the plaintiffs' claims alleged a direct injury to the plaintiffs which was not derivative of any harm to the debtor. In particular, the plaintiffs alleged that the former principals "misrepresented to [the plaintiffs] the financial situation of EGHT, and that they materially relied on such representations to their detriment." *Id.* The court therefore held that certain claims belong to the plaintiff school districts to the extent that they alleged "a direct injury to the plaintiff school districts." *Id.* The plaintiffs' claims for violations of the Texas Deceptive Trade Practices Act, violations of the Texas Insurance Code, fraud, negligence, and negligent misrepresentation therefore belonged to the plaintiffs.

In *Highland Capital Mgmt. LP v. Chesapeake Energy Corp. (In re Seven Seas Petroleum, Inc.)*, 522 F.3d 575, 585 (5th Cir. 2008), the Fifth Circuit held that holders of bonds issued by the debtor, Seven Seas Petroleum, could bring "claims based on damages that *they* suffered as a result of *their* reliance on the false reserve estimates when *they* invested in the unsecured notes, as Seven Seas simply was not harmed by misrepresentations made to the bondholders to induce them to buy."

The Peterson and Kinloch lawsuits are similar to the claims the Fifth Circuit held belonged to the plaintiff school districts in *Educators* and to the bondholders in *Seven Seas*. The Defendants assert negligent misrepresentation claims against the Directors, alleging that they misrepresented the

financial condition of Ausam. However, the Defendants' claims are more expansive than those in *Educators* and *Seven Seas*. The Defendants also allege that the Directors negligently allowed the issuance of the Subscription shares and warrants even though issuing shares would breach the Debenture.

Both the Defendants and Ausam were allegedly damaged by the issuance of the Subscription, but this is not determinative of claim ownership. As the court noted in *Seven Seas*, "it is entirely possible for a bankruptcy estate and a creditor to own separate claims against a third party arising out of the same general series of events and broad course of conduct." 522 F.3d at 585.

However, the Defendants' claim for negligence does not merely overlap with Ausam's claim for damages caused by the breach of the Debenture; the Defendants' alleged damages from the breach are entirely derived from Ausam's damages. If Ausam had not been harmed as a result of the breach, the Defendants would not have been harmed. The Defendants may not assert claims for injuries that are only derivative of injuries to Ausam. *Educators*, 25 F.3d at 1284 ("If a cause of action alleges only indirect harm to a creditor (i.e., an injury which derives from harm to the debtor), and the debtor could have raised a claim for its direct injury under the applicable law, then the cause of action belongs to the estate.").

To the extent that the Defendants claims are based on the harm they suffered solely as a result of the Directors' failure to disclose Ausam's financial condition, the Defendants own the claims. Ausam/Noram could not have brought claims for negligent misrepresentation to the Defendants as of the petition date.

The Defendants' damage calculation must, however, exclude consideration of the reduction in value caused by the breach of the Debenture. The Texas Supreme Court, citing the Restatement (Second) of Torts § 552B (1977), provided the following measure of damages for a negligent misrepresentation claim:

> (1) The damages recoverable for a negligent misrepresentation are those necessary to compensate the plaintiff for the pecuniary loss to him of which the misrepresentation is legal cause, including
> (a) the difference between the value of what he has received in the transaction and its purchase price or other value given for it; and
> (b) pecuniary loss suffered otherwise as a consequence of the plaintiffs reliance upon the misrepresentation.

*Federal Land Bank Ass'n v. Sloane*, 825 S.W.2d 539, 442 (Tex. 1991) (citing Restatement (Second) of Torts § 552B (1977)). The Defendants therefore may recover the difference between the price of the shares and the actual value of the shares, plus additional pecuniary loss as a result of the alleged misrepresentation.

Because any claim for damages directly to Ausam belongs to the estate, the Defendants' recovery is limited to the damages caused *only* by the negligent misrepresentation, independent of damages caused by the default that was precipitated by the issuance of the Subscription shares. In other words, the value of what the Defendants received in the Subscription will be, for damages purposes, the value the shares *would have had* if the issuance of the Subscription did not violate the Debenture. The Defendants, as creditors of Ausam, will recover for damages to Ausam, if at all, through the estate.

To the extent that the Defendants seek damages for the injury caused by the default on the Debenture, the Trustee owns the claims. As discussed above, the Defendants may assert negligent misrepresentation claims against the Directors, but their damages are limited to the losses they would have suffered if the default had not occurred. The Defendants may not assert negligence claims based on alleged injury to Ausam.

The Defendants assert in their brief on the applicable measure of damages that they do not seek any damages for the alleged injury to Ausam, but only their own pecuniary losses suffered in reliance on the Directors' negligent misrepresentations. ECF No. 32, at 2. Despite the Defendants' disclaimer, the Defendants' state court pleadings tell another story. The cause of action in both

lawsuits is styled "Negligence-Negligent Failure to Disclose Material Facts." ECF No. 22-2, at 9; ECF No. 22-3, at 10. The Defendants allege not only that the Directors misrepresented Ausam's financial condition and/or withheld financial information, but also that the Directors "were negligent in consummating the Subscription, knowing that the issuance of Subscription shares and warrants would cause a default in the Debenture[.]" ECF No. 22-2, at 9; ECF No. 22-3, at 10. The Court holds that the state court pleadings assert negligence claims for damages to Ausam. The negligence claims based on damages to Ausam are property of the estate and may only be asserted by the Trustee.

The Court does not rule on the ownership of the insurance proceeds used to settle the Peterson lawsuit. It is premature to rule on the ownership of the proceeds. The Court rules only that the negligence claims for injury to Ausam belong to the estate and may be asserted only by the Trustee.

**Conclusion**

The Court grants, in part, and denies, in part, the Trustee's motion to determine property of the estate. The Court grants, in part, and denies, in part, the Defendants' motions for summary judgment.

SIGNED **July 2, 2012.**

Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE