

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

**ENTERED**
**05/11/2015**

| | | |
|---|---|---|
| IN RE: | § | |
| **NORAM RESOURCES, INC.,** *et al* | § | **CASE NO: 08-38222** |
| Debtor(s) | § | |
| | § | **CHAPTER  7** |
| | § | |
| **WILLIAM G WEST** | § | |
| Plaintiff(s) | § | |
| | § | |
| **VS.** | § | **ADVERSARY NO. 11-03598** |
| | § | |
| **FREDERICK E PETERSON,** *et al* | § | |
| Defendant(s) | § | |

## MEMORANDUM OPINION

William G. West, chapter 7 trustee for the estates of Ausam Energy Corp. and Noram Resources, Inc., is suing Frederick E. Peterson, Richard T. Aab, and Brian E. Bro for turnover of estate property.  Peterson and Aab previously filed state court lawsuits against former Ausam directors and officers, asserting claims for negligence and negligent misrepresentation.  Bro represented Peterson and Aab in these lawsuits.

Peterson and Aab's lawsuit settled, and Peterson and Aab were paid from the proceeds of an executive and organizational liability insurance policy allegedly owned by the Ausam/Noram estates.  In this adversary proceeding, West asserts that the settlement proceeds compensated Defendants for claims owned by the estate.  He seeks turnover of the proceeds paid to Peterson and Aab.  West has moved for summary judgment.  Peterson, Aab, and Bro have filed a cross-motion for summary judgment.

West's motion for summary judgment is denied.  Defendants' motion for summary judgment is granted to the extent it seeks a declaration that West may not recover the portion of the settlement proceeds that represent damages arising from the negligence claims.  A genuine

issue of material fact exists as to whether the Defendants' settlement of the state court lawsuit interfered with subsequent litigation on behalf of the estates. Accordingly, Defendants' motion for summary judgment is denied to the extent it seeks to bar all recovery of the settlement proceeds.

## Factual Background

Ausam Energy Corp. and its subsidiary, Noram Resources, Inc., were oil and gas companies incorporated under the laws of Alberta, Canada. (ECF No. 82 at 7). At some point prior to 2008, Ausam entered into a financing agreement with Huff Energy Fund, L.P. Ausam executed a $25,000,000.00 Senior Secured Convertible Debenture in favor of Huff. *Id.* at 7. Defendants allege that Paragraph 6.14 of the Debenture required that Ausam give to Huff a seven day right of first refusal before entering into financing with any party. (ECF No. 80-3 at 6). They further allege that the Debenture forbade Ausam from selling any shares or warrants for less than the current market value of the shares. *Id.*

On September 22, 2006, Ausam and various entities related to SKH Management L.P. entered into an Asset Purchase Agreement that conveyed SKH's rights, title, and interests in a number of oil and gas leases to Ausam. (Case No. 10-03701; ECF No. 33 at 3). Ausam publicly announced that the leases covered "drill-ready oil and gas prospects." *Id.* at 4. In fact, the properties were burdened with numerous title and leasing defects. These issues caused Ausam to experience cash flow difficulties. (ECF No. 82 at 8). On February 23, 2008, Ausam's CEO sent an email to its directors stating that Ausam's preliminary budget for the year showed an "excessive" deficit of $1 million. (Case No. 10-03701; ECF No. 33 at 10).

Facing a significant deficit, Ausam decided to raise additional capital through an equity offering. *Id.* Defendants Peterson and Aab both entered into a Subscription Agreement for Units

with Ausam.  Under the terms of the agreements, a unit consisted of "one common share in the capital of the Corporation . . . and one-half of one common share purchase warrant.[1]"  *Id.* Peterson purchased 116,500 'units' in exchange for $174,750.00.  (ECF No. 80-7).   Aab purchased 306,667 units for $460,000.00.   (ECF No. 80-8).   Both agreements were dated October 24, 2008. The parties agree that on October 24, 2008, the price for a publicly-traded Ausam common share on the TSX Venture Exchange was approximately $1.90.  Defendants paid $1.50 for each subscription unit.

The actual share certificates received by Defendants contained language restricting their free exchange for a period of four months.  In full, the certificates provided that:

> Unless permitted under Canadian securities legislation, the holder of this security must not trade the security before the date that is 4 months and a day after October 24, 2008.

> Without prior written approval of the TSX Venture Exchange and compliance with all applicable securities legislation, the securities represented by this certificate may not be sold, transferred, hypothecated or otherwise traded on or through the facilities of the TSX Venture Exchange or otherwise in Canada to or for the benefit of a Canadian resident before the date that is 4 months and a day after October 24, 2008.

(ECF No. 82-2 at 3).

On November 28, 2008, Huff Energy Fund sent a letter to Ausam indicating that Ausam was in default under the Debenture.  (ECF No. 80-9).  According to the letter, Ausam breached the Debenture through "(i) a private placement of equity [i.e., the Subscription Agreements], (ii) a warrant early exercise program, and (iii) a financing in the form of a "loan" (the "Loan") from Ausam's chairman of the Board (the "Chairman") (who is also affiliated with SKH Management L.P) . . . and a company affiliated with an individual shareholder of the Company."  *Id.*  Huff also notified Ausam that it had breached various mortgages executed by Noram in favor of Huff

---

[1] A subscription warrant is an instrument granting the holder an option to buy shares at a predetermined price. *Black's Law Dictionary* 1441 (7th ed. 1999).

by failing to promptly notify Huff regarding the defects in the SKH properties.  In the letter, Huff agreed to delay exercising its rights and remedies under the Debenture if Ausam took various steps to cure the defaults by December 3, 2008.  *Id.*  Ultimately, Ausam failed to do so.

## Procedural Posture

*The Peterson and Kinloch Lawsuits*

On December 30, 2008, Ausam and Noram filed voluntary chapter 11 petitions.  In its schedules, Ausam listed liabilities of $31,737,709.92 and assets of only $481,484.95.  (Case No. 08-38223; ECF No. 16).  Noram listed liabilities of $31,957,438.50 and assets of $507,684.32.  (Case No. 08-38222; ECF No. 16).  It soon became apparent that the entities would be unable to successfully reorganize.  On February 26, 2009, the Court granted Ausam's motion to convert both cases to chapter 7.  (Case No. 08-38222; ECF No. 70).  William G. West was appointed chapter 7 Trustee for the Ausam and Noram estates.

On August 3, 2009, Peterson and Aab, acting through their attorney Bro, filed a lawsuit in Harris County District Court against various former directors and officers of Ausam.  In their Third Amended Petition, Peterson and Aab sued the directors for negligence and negligent failure to disclose material facts, seeking punitive damages and seeking to have the Directors held jointly and severally liable.  (ECF No. 80-3).  Peterson and Aab alleged that the Ausam directors had notice that any issuance of shares below market price would breach covenants set forth in the Debenture, yet they proceeded to issue the shares to Peterson and Aab anyway.  The complaint further alleged that the Directors failed to disclose to Peterson and Aab that Ausam had already materially breached the Debenture.  These material breaches included "failing to keep Huff appraised [*sic*] of new leases and renewal of existing leases," "making misrepresentation [*sic*] and/or omissions to Huff regarding the SKH assets/leases," and "failing

to resolve misrepresentations and/or omissions made to Ausam regarding the SKH leases." *Id.* at 7-8.    Finally, Peterson and Aab alleged that the Ausam Directors made numerous misrepresentations regarding Ausam's true financial condition.

On January 5, 2011, Peterson and Aab dismissed their state court action after reaching a settlement with the Ausam Directors.  (ECF No. 82 at 13).  The settlement payment was $595,100.00.

On February 24, 2011, Kinloch Rice Field LLC and the William Carey Crane, Jr. Trust filed a similar lawsuit against the Ausam Directors in Harris County District Court.  (ECF No. 1-4).  Kinloch and the Crane Trust had also purchased subscription units from Ausam at the same $1.50 per unit price on October 24, 2008.[2]  (ECF No. 1-4 at 5).  Like Peterson and Aab, Kinloch and the Crane Trust alleged that the Directors were negligent in consummating the subscription and negligently misrepresented and/or negligently withheld material information about the financial condition of Ausam.  *West v. Peterson (In Re Noram Res., Inc.)*, 2012 WL 2571154 at *2 (Bankr. S.D. Tex. July 2, 2012).

*The Director Adversary Proceeding*

Independent of the Peterson and Kinloch lawsuits, West commenced an adversary proceeding against the Ausam Directors on December 29, 2010.  (Case No. 10-3701; ECF No. 1).  The lawsuit charged the Directors with gross negligence and an abdication of their fiduciary duties with regards to, among other issues, the SKH properties.  On June 28, 2013, the Court approved a Settlement Agreement between West and the Directors.  (Case No. 08-38222; ECF No. 281).  The Directors agreed to pay West $3,800,000.00 in exchange for the dismissal of Adversary Proceeding No. 10-3701 and a release of "all Settled Claims as against the settling Defendants."  *Id.* at 7.  The Settlement Agreement defined Settled Claims as:

---

[2] Kinloch invested $250,000 and the Crane Trust invested $100,000.

[A]ny claim right, demand, suit, matter, issue, or cause of action, whether known or unknown, fixed or contingent, foreseen or unforeseen, against the Settling Defendants, that the Trustee, the Debtors, or the Estates has, had, or will have against the Settling Defendants.  The Settled Claims include, without limitation, any claim whether made or unmade, whether under state, federal law, or foreign law, including without limitation any state, federal, or foreign securities laws, and whether directly, indirectly representatively or in any other capacity, in connection with, based upon, arising out of, sharing a nucleus of operative facts with, or in any way relating to the Settling Defendants' service as officers, directors, employees or shareholders of Ausam or Noram, including without limitation any claim that has been, attempted to be, or could have been raised by the Trustee, the Debtors, or the Estates in any of the Actions [an Action specifically includes the Peterson lawsuit].

*Adversary Proceeding 11-03598*

West filed this adversary proceeding against Peterson, Aab, Bro, Kinloch, and the Crane Trust on November 22, 2011.  (ECF No. 1).  He alleged that the state law claims asserted by Defendants in their actions in Harris County District Court were property of the estate.  As such, West sought turnover of the settlement proceeds to the estate under 11 U.S.C. § 542, as well as turnover of Kinloch and the Crane Trust's state law claims.

On February 29, 2012, Bro filed a motion for summary judgment.  Peterson, Aab, Kinloch and the Crane Trust also filed a motion for partial summary judgment regarding ownership claims and insurance proceeds on February 29.  (ECF Nos. 21, 23).  On the same day, West filed a motion to determine property of the estate, seeking a determination that the claims asserted in the Peterson and Kinloch lawsuits were property of the estate.  (ECF No. 22).  The Court held that claims for negligent misrepresentation were claims for direct injury and accordingly property of the Defendants.  *Peterson*, 2012 WL 2571154 at *5.  The negligence claims were derivative of injuries suffered by Ausam and accordingly were property of the estate.  *Id.*  In analyzing the negligent misrepresentation claims, the Court held: "[t]he Defendants therefore may recover the difference between the price of the shares and the actual

value of the shares, plus additional pecuniary loss as a result of the alleged misrepresentation. Because any claim for damages directly to Ausam belongs to the estate, the Defendants' recovery is limited to the damages caused *only* by the negligent misrepresentation. . . ." *Id.* at *7.

On December 5, 2014, West filed a motion for summary judgment against Peterson and Aab, arguing that because Peterson and Aab could have suffered no damages on their negligent misrepresentation claims, the entirety of the $595,100.00 in settlement proceeds resulted from the estate's negligence claims.  Peterson and Aab filed a cross-motion for summary judgment, arguing that because their damages on the negligent misrepresentation claims exceeded $595,100.00, they were entitled to keep all settlement proceeds.

On January 21, 2015, the Court granted a motion dismissing Kinloch and the Crane Trust from this adversary proceeding.  (ECF No. 84).  The Court had previously issued an order confirming that a settlement agreement between Kinloch, the Crane Trust, and the Ausam Directors did not settle any claims owned by the bankruptcy estates.  (Case No. 08-38222; ECF No. 326).

### Bankruptcy Court's Authority

This Court may not issue a final order or judgment in matters that are within the exclusive jurisdiction of Article III courts.  *Stern v. Marshall*, 131 S.Ct. 2594, 2620 (2011).  The Court may, however, issue interlocutory orders, even in proceedings in which the Court does not have authority to issue a final judgment.  A partial summary judgment motion is an interlocutory motion, and the constitutional limitations on the Court's authority to enter final judgments are not implicated.  *See West v. WRH Energy Partners LLC (In re Noram Res., Inc.)*, 2011 WL 6936361 at *1 (Bankr. S.D. Tex. Dec. 30, 2011) (stating that an interlocutory motion to dismiss does not implicate constitutional limitations on the Court's authority).

## Analysis

### Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Fed. R. Bankr. P. 7056 incorporates Rule 56 in adversary proceedings.  A party seeking summary judgment must demonstrate: (i) an absence of evidence to support the non-moving party's claims or (ii) an absence of a genuine dispute of material fact.  *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009); *Warfield v. Byron,* 436 F.3d 551, 557 (5th Cir. 2006).  A genuine dispute of material fact is one that could affect the outcome of the action or allow a reasonable fact finder to find in favor of the non-moving party. *Brumfield v. Hollins,* 551 F.3d 322, 326 (5th Cir. 2008).

A court views the facts and evidence in the light most favorable to the non-moving party at all times. *Campo v. Allstate Ins. Co.,* 562 F.3d 751, 754 (5th Cir. 2009).  Nevertheless, the Court is not obligated to search the record for the non-moving party's evidence.  *Malacara v. Garber,* 353 F.3d 393, 405 (5th Cir. 2003).  A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record, showing that the materials cited do not establish the absence or presence of a genuine dispute, or showing that an adverse party cannot produce admissible evidence to support the fact.[3]  Fed. R. Civ. P. 56(c)(1).  The Court need consider only the cited materials, but it may consider other materials in the record.  Fed. R. Civ. P. 56(c)(3).  The Court should not weigh the evidence.  A credibility determination may not be part of the summary judgment analysis.

---

[3] If a party fails to support an assertion or to address another party's assertion as required by Rule 56(c), the Court may (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if, taking the undisputed facts into account, the movant is entitled to it; or (4) issue any other appropriate order.  Fed.R.Civ.P. 56(e).

*Turner v. Baylor Richardson Med. Ctr.,* 476 F.3d 337, 343 (5th Cir. 2007).  However, a party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.  Fed. R. Civ. P. 56(c)(2).

 "The moving party bears the burden of establishing that there are no genuine issues of material fact." *Norwegian Bulk Transp. A/S v. Int'l Marine Terminals P'ship,* 520 F.3d 409, 412 (5th Cir. 2008).  The evidentiary support needed to meet the initial summary judgment burden depends on whether the movant bears the ultimate burden of proof at trial.

If the movant bears the burden of proof on an issue, a successful motion must present evidence that would entitle the movant to judgment at trial.  *Malacara,* 353 F.3d at 403.  Upon an adequate showing, the burden shifts to the non-moving party to establish a genuine dispute of material fact.  *Sossamon,* 560 F.3d at 326.  The non-moving party must cite to specific evidence demonstrating a genuine dispute.  Fed.R.Civ.P. 56(c)(1); *Celotex Corp. v. Cattrett,* 477 U.S. 317, 324 (1986).  The non-moving party must also "articulate the manner in which that evidence supports that party's claim."  *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force,* 379 F.3d 293, 301 (5th Cir. 2004).  Even if the movant meets the initial burden, the motion should be granted only if the non-movant cannot show a genuine dispute of material fact.  If the non-movant bears the burden of proof of an issue, the movant must show the absence of sufficient evidence to support an essential element of the non-movant's claim.  *Norwegian Bulk Transp. A/S,* 520 F.3d at 412.  Upon an adequate showing of insufficient evidence, the non-movant must respond with sufficient evidence to support the challenged element of its case.  *Celotex,* 477 U.S. at 324. The motion should be granted only if the nonmovant cannot produce evidence to support an essential element of its claim.  *Condrey v. Suntrust Bank of Ga.,* 431 F.3d 191, 197 (5th Cir. 2005).

**The Competing Summary Judgment Motions**

West argues that because the Peterson lawsuit settled claims that were owned both by the bankruptcy estates and by the individual Plaintiffs (Defendants in this adversary proceeding), the settlement proceeds must be apportioned between the negligence and negligent misrepresentation claims.  He then argues that because Defendants have admitted they received shares in Ausam for less than market value, they could not have suffered damages based on any negligent misrepresentations.  Accordingly, West argues that because no damages arose from the negligent misrepresentation claim, the entirety of the settlement constitutes estate property.

Defendants argue in their motion for summary judgment that the proper measure of damages for negligent misrepresentation is the difference between the price paid and the *actual* value received.  Although the Ausam shares traded at $1.90 per share at the time of the Subscription Agreements, Defendants claim they were effectively worthless.   Defendants received less than their initial investment in Ausam to settle their claims against the Directors.  If they truly received worthless shares, as Defendants argue, then the settlement proceeds could have compensated Defendants for the negligent misrepresentation claims.   Alternatively, Defendants argue that because West settled any negligence claims against the Directors in a separate adversary proceeding, he cannot recover on those same negligence claims from third parties.

Before discussing the appropriate measure of damages for the negligent misrepresentation claims, the Court must first address whether West's settlement agreement with the Directors prevents him from pursuing this turnover action.

**West Has Already Recovered Based on the Negligence Claims Asserted in the Peterson Lawsuit**

    *a.   Turnover Under the Bankruptcy Code*

Pursuant to 11 U.S.C § 541(a)(1), the act of filing for bankruptcy relief creates an estate that consists of "all legal or equitable interests in property as of the commencement of the case." Estate property includes causes of action belonging to the debtor at the commencement of a bankruptcy case. *Am. Nat'l Bank of Austin v. MortgageAmerica Corp. (In re MortgageAmerica Corp.)*, 714 F.2d 1266, 1276 (5th Cir. 1983). In turn, § 542(a) provides that an entity holding any property of the estate must turn it over to the trustee. *See United States v. Whiting Pools, Inc.*, 462 U.S. 198, 207 (1983). A trustee may also bring an action to turnover estate property provided they satisfy the following elements: 1) during the case; 2) an entity other than a custodian; 3) was in possession, custody or control; 4) of property that the trustee could use, sell or lease; 5) that such property is not of inconsequential value or benefit to the estate." *Dionne v. Colvin (In re Moore)*, 312 B.R. 902, 909 (Bankr. N.D. Ala. 2004).

Defendants argue that if West is allowed to recover the portion of the settlement proceeds flowing from the negligence claims, it would be a double recovery. Numerous courts have recognized an equitable defense of double satisfaction in the context of a turnover action. *See, e.g.*, *Brown v. Pyatt (In re Pyatt)*, 486 F.3d 423, 427 (8th Cir. 2007); *Newman v. Schwartzer (In re Newman)*, 487 B.R. 193, 201 (9th Cir. B.A.P. 2013); *Jubber v. Ruiz (In re Ruiz)*, 455 B.R. 745, 752 (10th Cir. B.A.P. 2011); *Hirsch v. Gersten (In re Centennial Textiles, Inc.)*, 220 B.R. 165, 176 (Bankr. S.D.N.Y. 1998). A district court in the Southern District of Texas has also suggested that a trustee is not entitled to a double recovery, although it did not hold so explicitly. *In re Advent Trust Co.*, 2007 WL 2908816 at *1 (S.D. Tex. Oct. 5, 2007).

This issue requires some additional nuance. As set forth in the following section, the settlement received by West from the Directors resolves the damages allegedly caused by the Directors. West may not now recover from Peterson, Aab and Bro damages that duplicate his

recovery.  The Court notes that West does *not* allege that he settled with the Directors for a lesser amount because of the actions taken by Peterson, Aab and Bro.  Accordingly, allowing West to recover damages collected by Peterson, Aab and Bro would constitute an impermissible double recovery.

West alleges other damages, primarily measured in the expenditure of attorneys' fees, stemming from Peterson, Aab and Bro's actions to exercise control over Estate property.  If those damages are proven, they would differ in kind and character from the damages that were collected in the settlement with the directors.  Collection of those damages would not constitute a double recovery.

> b. *The Settlement Agreement Included Recovery for the Negligence Claims Against the Ausam Directors*

When West settled Adversary Proceeding No. 10-3701 with the Ausam Directors, he agreed to release "all Settled Claims as against the Settled Defendants."  (Case No. 08-38222; ECF No. 281).  West makes three arguments as to why the Settlement Agreement can not constitute a double recovery.  First, he argues that because Defendants settled claims belonging to the estate with the Ausam Directors *before* the trustee did (December 2010 compared to June 2013, respectively), the settlement of the Director Adversary Proceeding could have no effect on Defendants' misuse of estate property.  This argument is misplaced.  While it is true that Defendants may have exercised control over estate property when they settled a lawsuit with claims they did not own, if West then settled those same claims in a subsequent proceeding, he cannot have two bites at the apple by recovering from Defendants as well.[4]

---

[4] Defendants' double recovery argument could also be stated in different terms.  Article III of the Constitution restricts the power of federal courts to "cases and controversies."  If the issues presented in a lawsuit are no longer 'live' because a party lacks a legally cognizable interest in the outcome, the case becomes moot and cannot be a case or controversy.  *Chafin v. Chafin*, 133 S.Ct. 1017, 1023 (2013).  "Mootness problems arise from a wide array of circumstances in which the plaintiff has secured the requested relief by some means other than final decision of the

West's second argument is that the Settlement Agreement did not settle the same claims asserted in the Peterson lawsuit and therefore could not represent a double recovery. When the Settlement Agreement was approved on June 28, 2013, the live complaint in Adversary Proceeding No. 10-3701 was the Second Amended Complaint. (Case No. 10-3701; ECF No. 33). Notably, the Second Amended Complaint contained no mention of the Ausam Directors' negligence in causing the Huff Debenture default through the issuance of the subscription units. West argues that because the two lawsuits involved separate claims, he would not obtain a double recovery through turnover of Defendants' settlement proceeds.[5]

The fact that West initially failed to enumerate the "Huff Debenture" negligence theory in the complaint is of no avail. West's argument is undercut by the fact that on August 20, 2012 West filed a Rule 15 motion to amend his complaint to include, in his words, allegations "*taken almost verbatim* from the language of petitions filed in two state court actions [the Peterson and Kinloch adversaries]." (Case No. 10-3701; ECF No. 87) (emphasis added). Although the Settlement Agreement mooted the Rule 15 motion and these allegations were never formally pleaded, West was certainly aware of the negligence claims asserted in state court when he negotiated the settlement. The Settlement Agreement itself states that it includes "any claim whether made or unmade . . . in any way relating to the Settling Defendants' service as officers, directors . . . of Ausam or Noram, including . . . any claim that has been, *attempted to be*, or could have been raised by the Trustee. . ." West undeniably attempted to assert negligence

---

litigation, or has abandoned the quest." 13B Charles A. Wright, Arthur R. Miller, & Edward H. Cooper, *Federal Practice and Procedure* § 3533.2 (3d ed. 2008). If West received the relief he requested in this adversary proceeding through settling the Director Adversary Proceeding, then his claims against Defendants would become moot.

[5] The Court does disagree with West's contention that "the Trustee's Second Amended Complaint sought no compensation for injuries of any kind detailed in the Defendant's Third Amended Petition in *Peterson*." (ECF No. 86 at 25). Both West's complaint and the Defendants' complaint go into detail regarding the misconduct surrounding the SKH leases. Although the complaints may have differed as to the precise relief sought, they undeniably share a nucleus of operative facts.

claims relating to the Huff Debenture in the Director Adversary Proceeding.  Regardless of whether any live pleading against the Ausam Directors included the precise claims asserted by Defendants, the Trustee received valuable consideration to settle *all* claims regarding the directors' conduct while running the company.  Accordingly, West has already recovered on Defendants' negligence claims.

It should also be noted that West successfully intervened in the Kinloch lawsuit and removed it to bankruptcy court.  (Case No. 12-03322; ECF No. 1).  The original Kinloch plaintiffs were two other entities who invested in Ausam through Subscription Agreements and sued the Ausam Directors for the same causes of action as the Peterson Defendants.  On August 14, 2013, West filed a Second Amended Complaint which specifically alleged that the Ausam Directors were negligent by issuing the Subscription Agreements knowing they "would cause a default, or claims of default by the lender, in the Debenture and/or in not obtaining Huff's written permission to go forward with the Subscription, prior to going forward with the Subscription." (Case No. 12-03222; ECF No. 36 at 8).  This is the *exact* cause of action which is at the center of the instant adversary proceeding.  As the Settlement Agreement settled "any claim that has been . . . raised by the Trustee . . . in any of the Actions [which specifically includes the Kinloch Adversary]," it is apparent that the Settlement Agreement included compensation for any negligence claims relating to the Huff Debenture.

West's final argument against a double recovery is that because the $3.9 million Settlement Agreement was far short of the claimed $21.6 million in damages, it could not have included compensation for the negligence related to the Huff Debenture.  In the Director Adversary Proceeding, West alleged that the Ausam Directors caused the company to overpay by $19,250,000.00 in acquiring the SKH leases and caused approximately $2.5 million in other

damages. *West v. Avery (In re Noram Res., Inc.)*, 2011 WL 5357895 at * 17-19 (Bankr. S.D. Tex. Nov. 7, 2011). But as West himself acknowledges, a "settlement amount is discounted versus a plaintiff's claimed damages due to the uncertainty of litigation." (ECF No. 86 at 19) (citing *Pollett v. Sears Roebuck and Co.*, 2002 WL 1939917 at *1 (5th Cir. July 18, 2002)). In his motion to approve compromise, West noted that a trial in the Director Adversary Proceeding would be expensive, perhaps taking a full week and requiring significant expert testimony. (Case No. 08-38222; ECF No. 257 at 11). He also acknowledged that his claims were subject to a "colorable" statute of limitations defense.

The evidence strongly supports the conclusion that West considered the Huff Debenture negligence claims in negotiating the settlement agreement. Even without such evidence, The mere fact that West settled the lawsuit for less than the alleged damages would be insufficient to establish that the settlement did not encompass the additional negligence claims. West claims that it is "wholly plausible" that the Settlement Agreement compensated the estates only for those causes of action set forth in the Second Amended Complaint in the Director Adversary Proceeding. He provides no evidence to support this assertion, however. Given that the evidentiary record, i.e., the plain language of the Settlement Agreement, indicates that the Settlement Agreement *did* compensate for the negligence claims, the Court declines to speculate as to what is plausible.

Because West has already recovered on the negligence claim, equity will not allow a second recovery. West may not recover the portion of Defendants' settlement proceeds traceable to the negligence claims.[6]

For the purpose of completeness, the Court distinguishes this case from one in which

---

[6] Although the Court's prior memorandum opinion determined that the negligence claims in the Peterson lawsuit were property of the estates, it did not determine that any of those proceeds needed to be repaid. *West v. Peterson (In Re Noram Res., Inc.)*, 2012 WL 2571154 at *2 (Bankr. S.D. Tex. July 2, 2012)

there are joint tortfeasors (or joint contract breachers).  A settlement with one joint actor for less than the total amount of asserted damages would not bar a recovery from another tortfeasor based on a theory of double recovery.  *Krobar Drilling, L.L.C. v. Ormiston*, 426 S.W.3d 107, 112 (Tex. App. 2012).  That is not the present situation.  Peterson, Aab and Bro did not participate in the original breach; instead, they allegedly usurped the right to collect for the breach.  Once West has fully recovered (by settlement or otherwise) for the breach, he cannot recover again for the same breach by the same parties.

West also argues that Defendants were unjustly enriched through their use of estate property and that the 'ill-gotten gains' should be disgorged.  West has not pled unjust enrichment, however.  Unjust enrichment is an independent cause of action.  *Pepi Corp. v. Galliford*, 254 S.W.3d 457, 460 (Tex. App. 2007) (citing *HECI Exploration Co. v. Neel*, 982 S.W.2d 881, 891 (Tex. 1998).  The failure to plead unjust enrichment can lead to denial of relief. *See Trevino v. Frio County*, 2004 WL 383284 at *1 (Tex. App. Mar. 3, 2004); *Barrick v. CRT Disaster Servs.*, 2007 WL 2790386 at *6 (Tex. App. Sep. 27, 2007).  Because West only discusses his unjust enrichment claims at the summary judgment stage, it has not been properly raised before this Court.

### The Peterson Settlement Impacted West's Prosecution of the Negligence Claims

West cannot recover damages for the underlying negligence claim.  However, if Defendants' control over claims owned by the estate impacted West's ability to prosecute such claims, they will be liable.  In August of 2009, Defendants brought a lawsuit in state court a full seven months after Ausam and Noram had filed for bankruptcy.  Defendants admit that they had knowledge of the bankruptcy when they filed the suit.  (ECF No. 14 at 2).  Because the bankruptcy estate is created as soon as a petition for relief as filed, Defendants exercised control

over estate property, by settling the lawsuit that included the negligence claims. This action violated § 362(c)(3) of the Bankruptcy Code.  Then, in December of 2010, West filed his own lawsuit against the Directors on those same negligence claims.  While the Director Adversary Proceeding was still pending, Defendants settled claims which they did not own.  As this Court has already ruled, Peterson and Aab's claims for negligent misrepresentation stemming from the Directors' failure to disclose Ausam's true financial condition were not property of the estate. *West v. Peterson (In re Noram Res., Inc.)*, 2012 WL 257114 at*6 (Bankr. S.D. Tex. July 2, 2012).   However, the claim that the Directors negligently allowed the issuance of the Subscription Agreements damaged Ausam as well as Defendants, and were property of the estate. *Id.*

An essential element of a turnover action is that the estate property in question must have consequential value.  11 U.S.C. § 542(a) ("an entity . . . shall deliver to the trustee . . . such property or the value of such property, unless such property is of inconsequential value, or benefit to the estate").  If Defendants, through settling claims rightfully owned by the estates, impacted the prosecution of the subsequent lawsuits, then the claims would have consequential value.

The evidentiary record does demonstrate such an impact, although it may have been minimal.  At some point after the Peterson settlement, West filed a motion in Harris County District Court to intervene in the state court suit and to substitute as plaintiff.  (ECF No. 82-5).  This motion was denied on August 29, 2012.  As West pointed out in his motion to approve compromise, seeking to intervene in the state court suit to protect the estates' negligence claims cost both time and money.  (Case No. 08-38222; ECF No. 257 at 11).  Prior to settling the Director Adversary Proceeding, West also contemplated filing a bill of review regarding a

judicial determination that the January 5, 2011 non-suit order in the Peterson state court proceeding did not have any effect on claims belonging to the estates. *Id.* West stated that the desire to avoid the cost of filing the bill of review was a factor in seeking a settlement of the Director Adversary Proceeding.  If Defendants had not exercised control over estate property, West would have been free to pursue the negligence claims without needing to seek review of the state court judgments.  West's attempted intervention in the Peterson lawsuit as well as the allegation that the Peterson lawsuit was a factor in seeking a settlement in the Director Adversary Proceeding are sufficient to show a genuine issue of material fact.  West may recover damages for the additional costs the estate incurred as a result of the Defendants' improper prosecution of the Peterson lawsuit.  A fact issue exists as to the amount of these alleged damages.

## Conclusion

The Court will issue an order consistent with this memorandum opinion.

SIGNED **May 11, 2015.**

_____

Marvin Isgur

UNITED STATES BANKRUPTCY JUDGE