

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

ENTERED
10/09/2015

| | | |
|---|---|---|
| **IN RE:** | § | |
| **NORAM RESOURCES, INC.,** *et al* | § | **CASE NO: 08-38222** |
| **Debtor(s)** | § | |
| | § | **CHAPTER 7** |
| | § | |
| **WILLIAM G WEST** | § | |
| **Plaintiff(s)** | § | |
| | § | |
| **VS.** | § | **ADVERSARY NO. 11-03598** |
| | § | |
| **FREDERICK E PETERSON,** *et al* | § | |
| **Defendant(s)** | § | |

## MEMORANDUM OPINION

William G. West, Chapter 7 Trustee, has filed a summary judgment motion against Defendants Peterson, Aab, and Bro seeking damages and/or sanctions for violation of the automatic stay. Defendants have filed a cross-motion for summary judgment. Pending the resolution of an evidentiary hearing or a stipulation by the parties, a genuine issue of material fact exists as to the amount, if any, of actual damages. The parties are to file a stipulation by October 23, 2015 at 5 p.m. as to the amount of actual damages borne by the Estate. If the parties cannot reach an agreement, the Court will conduct an evidentiary hearing. The Court will reconsider summary judgment following resolution of this issue.

### Background

The Court has summarized the facts leading up to this dispute in a previous opinion, *West v. Peterson (In re Noram Res., Inc.)*, 2015 WL 2265405 (Bankr. S.D. Tex. May 11, 2015). Briefly, Debtors Ausam Energy Corp. and it subsidiary, Noram Resources, Inc. were oil and gas companies incorporated under the laws of Alberta, Canada. (ECF No. 82 at 7). At some point prior to 2008, Ausam entered into a financing agreement with Huff Energy Fund, L.P. *Id.*

Ausam executed a $25,000,000.00 Senior Secured Convertible Debenture in favor of Huff.  *Id.*
Paragraph 6.14 of the Debenture forbade Ausam from selling any shares or warrants for less than
the current market value of the shares.  (ECF No. 80-3 at 6).

In February of 2008, Ausam experienced financial difficulties and decided to raise
capital through an equity offering.  (Case No. 10-03701; ECF No. 33 at 10).   Defendants
Peterson and Aab both entered into a Subscription Agreement for Units with Ausam.  Under the
terms of the agreement, a unit consisted of "one common share in the capital of the Corporation .
. . and one-half of one common share purchase warrant."  *Id.*  Peterson purchased 116,500 units
in exchange for $174,750.00.  (ECF No. 80-7).  Aab purchased 306,667 units for $460,000.00.
(ECF No. 80-8).  On October 24, 2008, when Defendants purchased the units, Ausam common
shares traded at approximately $1.90 per share on the TSX Venture Exchange.  Defendants paid
$1.50 per unit.

On November 28, 2008, Huff notified Ausam that it was in default under the Debenture.
(ECF No. 80-9).  Huff claimed that Ausam had breached the Debenture by selling shares to
Defendants for below market value.  In addition, Huff claimed Ausam failed to notify it of
certain title and leasing defects involving properties Ausam had purchased from SKH
Management L.P.  *Id.*  On December 30, 2008, Ausam and Noram filed voluntary chapter 11
petitions.  The cases were converted to chapter 7 on February 26, 2009.  (Case No. 08-38222;
ECF No. 70).  William G. West was appointed chapter 7 trustee for the Ausam and Noram
estates.

**Procedural Posture**

*The Peterson and Kinloch Lawsuits*

On August 3, 2009, Peterson and Aab, acting through their attorney Bro, filed a lawsuit in Harris County District Court against various former directors and officers of Ausam.  In their Third Amended Petition, Peterson and Aab sued the directors for negligence and negligent failure to disclose material facts, seeking punitive damages and seeking to have the Directors held jointly and severally liable.  (ECF No. 80-3).  Peterson and Aab alleged that the Ausam directors had notice the issuance of the subscription units would breach the Debenture, yet proceeded to do so anyway.  The complaint further alleged that the Directors failed to disclose to Peterson and Aab that Ausam had already materially breached the Debenture by failing to disclose the defects related to the SKH properties.  *Id.*  Finally, Peterson and Aab alleged that the Ausam Directors made numerous misrepresentations regarding Ausam's true financial condition.

On January 5, 2011, Peterson and Aab dismissed their state court action after reaching a settlement with the Ausam Directors.   (ECF No. 82 at 13).   The settlement payout was $595,100.00.

On February 24, 2011, Kinloch Rice Field LLC and the William Carey Crane, Jr. Trust filed a similar lawsuit against the Ausam Directors in Harris County District Court.  (ECF No. 1-4).  Kinloch and the Crane Trust had also purchased subscription units from Ausam at the same $1.50 per unit price on October 24, 2008.  (ECF No. 1-4 at 5).  Like Peterson and Aab, Kinloch and the Crane Trust alleged that the Ausam Directors were negligent in consummating the subscription agreement and negligently misrepresented and/or negligently withheld material information about Ausam's financial condition.  *West v. Peterson (In re Noram Res., Inc.)*, 2012 WL 2571154 at *2 (Bankr. S.D. Tex. July 2, 2012).

*The Director Adversary Proceeding*

Independent of the Peterson and Kinloch lawsuits, West commenced an adversary proceeding against the Ausam Directors on December 29, 2010 (Case No. 10-3701; ECF No. 1). The lawsuit charged the Directors with gross negligence and an abdication of their fiduciary duties with regards to, among other issues, the SKH properties.  On June 28, 2013 the parties settled the lawsuit.   The Directors agreed to pay West $3,800,000.00 in exchange for the dismissal of the adversary proceeding and a release of "all Settled Claims."  (Case No. 08-38222; ECF No. 281).  The definition of Settled Claims included "any claim whether made or unmade . . . in any way relating to the settling Defendants' service as officers, directors, employees or shareholders of Ausam or Noram, including without limitation any claim that has been, attempted to be, or could have been raised by the Trustee. . . ." *Id.*

*Adversary Proceeding 11-03598*

West filed this adversary proceeding against Peterson, Aab, Bro, Kinloch, and the Crane Trust on November 22, 2011.  (ECF No. 1).  He alleged the state law claims asserted by Defendants in their actions in Harris County District Court were property of the estate.  As such, West sought turnover of the settlement proceeds to the estate under 11 U.S.C. § 542, as well as turnover of the Kinloch and the Crane Trust's state law claims.

On February 19, 2012 Bro filed a motion for summary judgment.   Peterson, Aab, Kinloch, and the Crane Trust also filed a motion for partial summary judgment regarding ownership claims and insurance proceeds on February 29.  (ECF Nos. 21, 23).  On the same day, West filed a motion to determine property of the estate, seeking a determination that the claims asserted in the Peterson and Kinloch lawsuits were property of the estate.  (ECF No. 22).  The Court held that the claims for negligent misrepresentation were claims for direct injury and

accordingly property of the Defendants. *Peterson*, 2012 WL 2571154 at *5. The negligence claims were derivative of injuries suffered by Ausam and were accordingly property of the estate. *Id.* The Court held that Defendants could only retain the settlement proceeds to the extent they were traceable *only* to the negligent misrepresentation claim.[1] *Id.* at 7.

On December 5, 2014, West filed a motion for summary judgment against Peterson and Aab, arguing that because Peterson and Aab could have suffered no damages on their negligent misrepresentation claims, the entirety of the $595,100.00 in settlement proceeds resulted from the estate's negligence claims. Peterson and Aab filed a cross-motion for summary judgment, arguing that because their damages on the negligent misrepresentation claims exceeded $595,100.00, they were entitled to keep all settlement proceeds.

The Court denied West's motion for summary judgment. It granted Defendants' motion for summary judgment to the extent it sought a declaration that West could not recover the portion of the settlement proceeds representing damages arising from the negligence claims. (ECF No. 88 at 1). Because West had previously settled the estate's potential claims against the Ausam Directors for $3.8 million—including the negligence claim—he could not recover the portion of Defendants' settlement traceable to the negligence claim. (ECF No. 88 at 15). However, the Court found that Defendants had violated § 362(c)(3) of the Bankruptcy Code by settling a lawsuit which included claims belonging to the estate. The Court held that "West may recover damages for the additional costs the estate incurred as a result of the Defendants' improper prosecution of the Peterson lawsuit. A fact issue exists as to the amount of those alleged damages." (ECF No. 88 at 18).

---

[1] The Court issued a separate order confirming that a settlement agreement between Kinloch, the Crane Trust, and the Ausam Directors did not settle any claims owned by the bankruptcy estates. Kinloch and the Crane Trust were dismissed from this adversary proceeding. (ECF No. 84).

On June 5, 2015, West filed a new motion for summary judgment seeking sanctions in the amount of $160,129.21 for the automatic stay violation. (ECF No. 92). Defendants filed a cross-motion for summary judgment on June 26, 2015, arguing the estates had suffered no actual damages. (ECF No. 93).

## Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Fed. R. Bankr. P. 7056 incorporates Rule 56 in adversary proceedings. A party seeking summary judgment must demonstrate: (i) an absence of evidence to support the non-moving party's claims or (ii) an absence of a genuine dispute of material fact. *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009); *Warfield v. Byron,* 436 F.3d 551, 557 (5th Cir. 2006). A genuine dispute of material fact is one that could affect the outcome of the action or allow a reasonable fact finder to find in favor of the non-moving party. *Brumfield v. Hollins,* 551 F.3d 322, 326 (5th Cir. 2008).

A court views the facts and evidence in the light most favorable to the non-moving party at all times. *Campo v. Allstate Ins. Co.,* 562 F.3d 751, 754 (5th Cir. 2009). Nevertheless, the Court is not obligated to search the record for the non-moving party's evidence. *Malacara v. Garber,* 353 F.3d 393, 405 (5th Cir. 2003). A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record, showing that the materials cited do not establish the absence or presence of a genuine dispute, or showing that an adverse party cannot produce admissible evidence to support the fact.[2] Fed. R. Civ. P. 56(c)(1). The Court need consider only the cited materials, but it may

---

[2] If a party fails to support an assertion or to address another party's assertion as required by Rule 56(c), the Court may (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for the purposes

consider other materials in the record.  Fed. R. Civ. P. 56(c)(3).  The Court should not weigh the evidence.  A credibility determination may not be part of the summary judgment analysis. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).  However, a party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.  Fed. R. Civ. P. 56(c)(2).

"The moving party bears the burden of establishing that there are no genuine issues of material fact." *Norwegian Bulk Transp. A/S v. Int'l Marine Terminals P'ship,* 520 F.3d 409, 412 (5th Cir. 2008).  The evidentiary support needed to meet the initial summary judgment burden depends on whether the movant bears the ultimate burden of proof at trial.

If the movant bears the burden of proof on an issue, a successful motion must present evidence that would entitle the movant to judgment at trial.  *Malacara*, 353 F.3d at 403.  Upon an adequate showing, the burden shifts to the non-moving party to establish a genuine dispute of material fact.  *Sossamon*, 560 F.3d at 326.  The non-moving party must cite to specific evidence demonstrating a genuine dispute.  Fed. R. Civ. P. 56(c)(1); *Celotex Corp. v. Cattrett*, 477 U.S. 317, 324 (1986).  The non-moving party must also "articulate the manner in which that evidence supports that party's claim." *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 301 (5th Cir. 2004).  Even if the movant meets the initial burden, the motion should be granted only if the non-movant cannot show a genuine dispute of material fact.  If the non-movant bears the burden of proof of an issue, the movant must show the absence of sufficient evidence to support an essential element of the non-movant's claim.  *Norwegian Bulk Transp. A/S*, 520 F.3d at 412.  Upon an adequate showing of insufficient evidence, the non-movant must respond with sufficient evidence to support the challenged element of its case.

---

of the motion; (3) grant summary judgment if, taking the undisputed facts into account, the movant is entitled to it; or (4) issue any other appropriate order.  Fed. R. Civ. P. 56(e).

*Celotex*, 477 U.S. at 324.  The motion should be granted only if the nonmovant cannot produce evidence to support an essential element of its claim.  *Condrey v. Suntrust Bank of Ga.*, 431 F.3d 191, 197 (5th Cir. 2005).

**Analysis**

*Civil Contempt and the Automatic Stay*

West requests the Court grant an award of $160,129.21 under "its inherent and equitable powers and 11 U.S.C. § 105" based on a violation of the automatic stay.  (ECF No. 92 at 9).  Section 362(a)(3) of the Bankruptcy Code states that the filing of a bankruptcy petition operates as a stay against "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate."   The Court has already ruled that Defendants exercised control over estate property by settling the lawsuit containing negligence claims in violation of the automatic stay.  (ECF No. 88 at 17).   Under § 362(k), "an *individual* injured by any willful violation of [the automatic stay] shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." Although the Fifth Circuit has not expressly ruled on this issue, the majority of circuits and a majority of lower courts within this circuit have held that corporate debtors cannot recover under § 362(k).  *Milbank v. Philips Lighting Elec. N. Am. (In re Elcoteq, Inc.)*, 521 B.R. 189, 204 n. 8 (Bankr. N.D. Tex. 2014) (citing *In re San Angelo Pro Hockey Club, Inc.,* 292 B.R. 118, 124 (Bankr. N.D. Tex. 2003).

Nevertheless, the Court may invoke its civil contempt powers under § 105(a) to remedy violations of the automatic stay.  *Sanchez v. Ameriquest Mortg. Co. (In re Sanchez)*, 372 B.R. 289, 309 (Bankr. S.D. Tex. 2007).  11 U.S.C. § 105(a) states that a bankruptcy court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this

title." Under the plain meaning of the statute, a bankruptcy court may issue a civil contempt order necessary or appropriate to carry out the provisions of the Bankruptcy Code. *See Placid Ref. Co. v. Terrebonne Fuel & Lube, Inc. (In re Terrbonne Fuel & Lube, Inc.)*, 108 F.3d 609, 613 (5th Cir. 1997). However, because West can only recover under the contempt authority of § 105(a), rather than a private right of action under § 362(k), any recovery must comport with the applicable legal standard.

Civil contempt may only be employed in two situations: to coerce the defendant into compliance with a court order and/or to compensate the complainant for losses sustained. *Am. Airlines Inc. v. Allied Pilots Ass'n*, 228 F.3d 574, 585 (5th Cir. 2000) (citing *United States v. United Mine Workers of Am.*, 330 U.S. 285, 303-04 (1947)). It *may not* be punitive. A punitive fine, no matter how nominal, may be considered criminal "if the contemnor has no subsequent opportunity to reduce or avoid the fine through compliance." *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 829 (1994). Criminal sanctions are not authorized under the contempt authority of § 105(a). *See Griffith v. Oles (In re Hipp, Inc.)*, 895 F.2d 1503, 1521 (5th Cir. 1990).

The automatic stay is a self-executing injunction and constitutes a court order for contempt purposes. *Sanchez*, 372 B.R. at 311. A party may be found in civil contempt if it "violates an order of a court requiring in specific and definite language that a person do or refrain from doing an act." *Baddock v. Villard (In re Baum)*, 606 F.2d 592, 593 (5th Cir. 1979). There is no question that the automatic stay, defined by statute, is specific and definite. In a contempt action based on the automatic stay, the focus "is not on the subjective beliefs or intent of the contemnors in complying with the order, but whether in fact their conduct complied with the order at issue." *Knupfer v. Lindblade*, 322 F.3d 1178, 1191 (9th Cir. 2003) (quoting *Hardy v.*

*United States (In re Hardy)*, 97 F.3d 1384, 1390 (11th Cir. 1996). The Court has already determined that Defendants violated the automatic stay.[3] Accordingly, civil contempt may be an appropriate remedy if West can demonstrate an award is necessary to coerce compliance with a court order or to compensate for actual damages.[4]

*A Genuine Issue of Material Fact Exists as to Actual Damages*

A monetary award is not necessary here to compel Defendants to comply with a court order. Defendants have not violated the stay since the settlement of the Peterson Lawsuit in 2011. Indeed, after being informed of the potential stay violation, Defendant Bro—also serving as attorney to the Kinloch Plaintiffs—sought leave to amend the pleadings in the Kinloch Adversary to clarify that the Kinloch Plaintiffs were not pursuing any claims owned by the estates. (ECF No. 93-1 at 2). Defendants also supported West's attempt to intervene in the Peterson Lawsuit after the settlement, but that attempt was ultimately denied by the state court. *Id.* Given Defendants' attempts to mitigate the stay violation after-the-fact, a coercive award is not appropriate.

---

[3] Defendants' Third Amended Petition in the Peterson Lawsuit states that "Ausam filed for bankruptcy on December 30, 2008." (ECF No. 80-3). The petition was filed on April 12, 2010, well before the Peterson Lawsuit settled on January 5, 2011. Accordingly, Defendants knew the automatic stay was in effect at the time of the settlement and they intended the action which violated the stay, i.e., settling a claim owned by the estate. The stay violation was willful. Defendants may not have had the specific intent to violate the stay, but this is immaterial. "A willful violation does not require a specific intent to violate the automatic stay. Rather, the statute provides for damages upon a finding that the defendant knew of the automatic stay and that the defendant's actions which violated the stay were intentional." *Brown v. Chestnut (In re Chestnut)*, 422 F.3d 298, 302 (5th Cir. 2005).

[4] West argues that the Court has great discretion to fashion an appropriate remedy as a means of "compensating for, or punishing, the knowing violation of the section 362 stay." However, West has confused the ability of the Court to *sanction* with its ability to hold a party in civil contempt. Section 105(a) codifies a bankruptcy court's inherent authority to sanction in order to deter and provide compensation for a wide range of improper conduct. *In re Moran*, 2013 WL 4519608 at *4 (Bankr. S.D. Tex. Aug. 26, 2013). Sanctions must be accompanied by a specific finding of bad faith. *In re Parsley*, 384 B.R. 138, 179 (Bankr. S.D. Tex. 2008) (quoting *Goldin v. Bartholow*, 166 F.3d 710, 722 (5th Cir. 1999)). As noted above, § 105(a) also gives bankruptcy courts civil contempt authority to provide remedies necessary to enforce the Bankruptcy Code and court orders. *Moran*, 2013 WL 4519608 at *4. West has provided no evidence that Defendants acted in bad faith and accordingly the Court has no discretion to punish Defendants through sanctions.

However, West may recover for the losses he sustained as a result of Defendants' stay violation.  Specifically, he "may recover damages for the additional costs the estate incurred as a result of the Defendants' improper prosecution of the Peterson lawsuit."  (ECF No. 88 at 17).  The Court, in its previous memorandum opinion, noted that West's attempt to intervene in the Peterson lawsuit would not have been necessary had Defendants not violated the stay.  West also filed a motion to determine property of the estate in this adversary proceeding and successfully obtained the removal of the Kinloch Lawsuit to this Court.  (ECF. No. 22; Case No. 12-03322 ECF No. 1).  The cost of these actions to the Estate is not known.

West has provided an affidavit from Andrew L. Pickens, an attorney representing West in this adversary proceeding.  (ECF No. 92-2).  Pickens alleges that the total hourly value of time and expenses his firm has spent in this matter is not less than $160,129.21.  *Id.*  Defendants argue that although West may have incurred attorney's time in prosecuting the stay violation, the fees attributable to the time are not recoverable because West retained counsel on a contingency fee basis.  (Case No. 08-38222; ECF No. 195) (order authorizing employment of Strawn Pickens, L.L.P. on contingency).  West admits that his counsel was retained on contingency, but argues that he may still recover fees in order to vindicate the protections of the automatic stay.

Attorney's fees may be awarded as a civil contempt sanction to compensate the aggrieved party.  *Id.* (citing *Hutto v. Finney*, 437 U.S. 678 (1978)).  An award of attorney's fees under civil contempt authority is proper even for debtors who are not natural persons.  *Jove Eng'g, Inc. v. I.R.S.*, 92 F.3d 1539, 1554 (11th Cir. 1996) (citing *In re Chateaugay*, 920 F.2d 183, 186-87 (2d Cir. 1990)).  Any remedial fine must "be based upon evidence of a complainant's actual loss."  *United States v. United Mine Workers of Am.*, 330 U.S. 258, 304 (1947).  However, "the cost of bringing the violation to the attention of the court *is part of the damages suffered* by the

prevailing party. . . ."  *Cook v. Oschner Found. Hosp.*, 559 F.2d 270, 272 (5th Cir. 1977) (emphasis added).  Accordingly, the Court may award attorney's fees even where the plaintiff has suffered no other compensable harm.

But what if, as here, counsel agreed to represent the plaintiff on a contingency basis? Defendants argue that because West retained counsel on a contingency fee basis, the estate did not incur any attorney's fees in connection with the automatic stay violation.  If the estate is not responsible for the payment of attorney's fees, it is not entitled to an award thereof.  *In re Hedetneimi*, 297 B.R. 837, 843 (Bankr. M.D. Fla. 2003) (holding that a debtor was not entitled to an award of attorney's fees where there were no damages and she was represented pro bono); *see also In re Thompson*, 426 B.R. 759, 766 (Bankr. N.D. Ill. 2010) ("[Debtor] may only recover attorneys' fees for which he is actually responsible.").  Strawn Pickens agreed to represent West on a contingency basis, meaning it accepted the risk that the action would be unsuccessful (or in this case, unprofitable).  *See In re Coy Farms, Inc.*, 417 B.R. 17, 23 (Bankr. N.D. Ohio 2009).  A large award of attorney's fees would be particularly questionable under the facts of in this case.

Nevertheless, West may recover attorney's fees for which the estate was actually responsible.  Although counsel was retained on contingency basis, the summary judgment record is incomplete as to whether the Estate was responsible for some costs and attorney's fees.  A genuine issue of material fact exists as to the amount of actual damages incurred by the estate.[5]  .

---

[5] Defendants also question whether the entirety of the $160,129.21 in claimed damages are traceable to Defendants' stay violation.  For example, they allege that the $160,129.21 figure does not segregate between the Peterson Defendants and the Kinloch Defendants.  After the Court issued an order on September 24, 2014, confirming that the Kinloch Settlement Agreement did not settle any claims which were property of the estates, the Kinloch Defendants moved for dismissal.  (ECF No. 83 at 2).  West did not oppose the motion and the Kinloch Defendants were dismissed from this adversary proceeding on January 21, 2015.  (ECF No. 84).  The order stated that each party bore its own costs.  *Id.*  West cannot then recover these fees from the Peterson Defendants, who were not involved in the Kinloch Lawsuit.

West is also attempting to recover fees based on his unsuccessful turnover claims.  Although West was successful in obtaining an order determining that the negligence claim was property of the estate and that Defendants violated the

The parties are to file a stipulation by October 23, 2015 at 5 p.m. as to the amount of actual damages borne by the Estate.  If the parties cannot reach an agreement, the Court will conduct an evidentiary hearing.

### Conclusion

The Court will issue an order consistent with this Memorandum Opinion.

SIGNED **October 9, 2015.**

Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE

---

automatic stay, he sought turnover of the settlement proceeds and lost.  Awarding fees based on unsuccessful claims is not appropriate.  *See Burke v. Mcdonald*, 572 F.3d 51, 63 (1st Cir. 2009) (holding that "[e]xcluding fees for unsuccessful claims not interconnected with the successful claim" is appropriate).